**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ANN ANDERSON, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>COOPERATIVE RESPONSE CENTER, INC.,<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

COMES NOW Plaintiff, Ann Anderson, by and through her undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant Cooperative Response Center, Inc. and states as follows:

## INTRODUCTION

1. This is a collective and class action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Customer Service Representative ("CSR") employees of Defendant to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Minnesota Payment of Wages Act ("MPWA"), Minn. Stat. § 181.101, *et seq.*

2. Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of improper time punch rounding, which resulted in the failure to properly compensate CSRs as required under the FLSA and MPWA.

3. Defendant rounds the first and last time punch of the workday for CSRs. CSRs punching in or punching out seven (7) minutes before or seven (7) minutes after their

scheduled shift are rounded to their scheduled start or end times. This results in CSRs not being paid for all hours worked in accordance with the FLSA and MPWA.

4. CSRs perform principal duties or duties that are integral and indispensable to their principal duties, like performing boot-up and call ready activities, during the time that Defendant rounds away and does not compensate CSRs for.

5. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like the one held by Plaintiff, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

6. Plaintiff seeks a declaration that her rights, the rights of the FLSA Collective, and the rights of the MPWA Class were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative FLSA Collective and MPWA Class may be entitled.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

10. Upon information and belief, Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

11. Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

12. This Court has personal jurisdiction over Defendant because it is a Minnesota entity and maintains its principal place of business in the State of Minnesota.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction with respect to this action in this District,

conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in the Complaint occurred in this District.

**PARTIES**

14. Plaintiff is an individual who resides in Mower County, Minnesota. Plaintiff worked for Defendant as a Customer Service Representative I from March 2020 to May 2025. Plaintiff executed her Consent to Sue form, attached hereto as Exhibit B.

15. Defendant Cooperative Response Center, Inc., is a Minnesota cooperative with its principal place of business in Minnesota.

16. Defendant describes itself as "a nationwide, cooperatively owned and operated, 24/7 contact center, alarm monitoring center, and software provider" that provides "services to electric utilities, including round-the-clock dispatch and customer care, and monitoring of security and medical alarms." *See* https://crc.coop/about-us.

17. Defendant "serves over 535 members and associate members in 47 states, representing over 12 million consumers." *See id.*

18. Defendant operates call centers in Minnesota, Tennessee, Texas, and Missouri. *See id.*; Job Postings attached hereto as Exhibit C.

19. Defendant may accept service at its registered office address at 2000 8th St. NW Austin, MN 55912.

**GENERAL ALLEGATIONS**

20. Defendant employed Plaintiff as an hourly Customer Service Representative ("CCR"). Defendant assigns CSRs, like Plaintiff, to answer inbound calls from customers of Defendant's utility company clients.

21. Plaintiff's primary job duties included answering inbound calls from utility customers and providing customer service. More specifically, this included customer service related to utility outages, general consumer questions, and billing services.

22. Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

23. Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time that was recorded in Defendant's timekeeping system but went unpaid due to Defendant's rounding policy and practice.

***A. Defendant's Unlawful Rounding Policy and Practice.***

24. CSRs are rounded to their scheduled start or end times when they punch in or punch out seven (7) minutes before or seven (7) minutes after their scheduled shift.

25. For example, a CSR scheduled for a shift starting at 7:00 a.m. and ending at 3:30 p.m. who punched in for work between 6:53 a.m. and 7:07 a.m. would be paid starting at 7:00 a.m. Conversely, if the same CSR punches out between 3:23 p.m. and 3:37 p.m. they would be paid to 3:30 p.m.

26. Defendant calculates a CSR's wages due using the rounded time punch entry and not a CSR's actual time punch entry.

27. On its face, Defendant's rounding policy appears to be neutral. Returning to the example above, a CSR who clocks in after 7:00 a.m. or clocks out before 3:30 p.m. would receive the benefit of the rounding policy by having minutes "added on" to their

time punch. Theoretically, this arrangement averages out so that CSRs are fully compensated for all the time they actually work.

28. In practice, Defendant's rounding policy is not neutral. Defendant's rounding policy, over a period of time, results in Defendant failing to compensate its CSRs for all the time they have actually worked.

29. Defendant permits CSRs to clock-in up to seven (7) minutes before their scheduled shift start time.

30. If a CSR clocks in after their scheduled shift start time, then the timekeeping system flags the "late in" punch.

31. CSRs who receive "late in" flags are subject to coaching and disciplinary action.

32. Defendant does not permit CCRs to clock-out before their scheduled shift end time.

33. Defendant expects CSRs to be ready to receive phone calls until the end of their scheduled shift.

34. If a CSR clocks out before their scheduled shift end time, then the timekeeping system generates an "early out" flag.

35. CSRs who receive "early out" flags are subject to coaching and disciplinary action.

36. Therefore, a CSR must start their workday before their scheduled shift start time to complete the boot-up and call ready work as alleged herein, but Defendant fails to pay CSRs for any work performed before their scheduled shift start time, and Defendant

discourages CSRs from completing any of the necessary boot-up and call ready work after their scheduled shift start time.

37. Conversely, Defendant prevents CSRs from clocking-out before their scheduled shift end time, because CSRs must be ready to receive and make phone calls until their scheduled shift ends.

38. Defendant's policies and practices are designed in a way to only round CSRs' hours down, and coach and/or discipline CSRs whose time would otherwise round up.

39. In total, this means that CSRs rarely, if ever, receive the benefit of Defendant's rounding policy.

40. Defendant's timekeeping system can and does record the exact time an hourly employee clocks in and out for work.

41. Defendant's timekeeping system is accurate to the minute or less.

42. Defendant has no good faith basis to use a rounding policy when its timekeeping program records its CSRs' actual clock-in and clock-out times within one-minute accuracy.

43. Defendant knows the actual clock-in and clock-out times for all of its CSR employees.

44. Defendant's rounding policy is intentionally designed to avoid paying its CSRs for all hours worked.

***B. Unpaid Boot-Up and Call Ready Work.***

45. Defendant tasked Plaintiff with providing customer service on behalf of Defendant's clients by use of Defendant's telephones, computers, and the programs accessible from Defendant's computers.

46. To make themselves call ready, Plaintiff, and all other current and/or former CSRs, must turn on or wake up their computers, enter their credentials, and then proceed to open necessary programs and applications. Once this boot-up and call ready work is completed, Plaintiff, and all other current and/or former CSRs, must log in to Defendant's phone system to take their first call at their scheduled shift start time.

47. Defendant does not compensate Plaintiff, and all other current and/or former CSRs for their boot-up and call ready work, if the work is performed during the rounding period.

48. The unpaid boot-up and call ready work Plaintiff, and all other current and/or former CSRs, must complete is the same regardless of which call center location they worked at or whether they worked remotely.

49. The boot-up and call ready work is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

50. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

51. Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CSRs, directly benefits Defendant.

### *C. Defendant's Rounding Policy and Practice Violates Federal and Minnesota Law.*

52. At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform unpaid boot-up and call ready work and/or principal activities by not compensating its employees for all hours worked through its rounding policy.

53. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8.

54. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for their compensable boot-up and call ready work and/or principal activities performed during the rounding period.

55. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the principal activities and/or boot-up and call ready work performed during the rounding period.

56. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for work performed during the rounding period in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

57. Defendant knew, or should have known, that the MPWA, Minn. Stat. 181.101, *et seq.*, requires Defendant to compensate non-exempt employees for all wages earned, including payment for principal activities and/or boot-up and call ready work in workweeks where CSRs worked less than 40 hours.

58. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CSRs, for work performed during the rounding period less than 40 hours in a workweek at their regular rates of pay.

59. Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

60. Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff.

61. In reckless disregard of the FLSA and MPWA, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former CSRs, to perform compensable work unpaid due to Defendant's rounding policy. This illegal policy, plan, or practice caused incorrect payments for all straight-time and overtime performed by Plaintiff, and all other current and/or former CSRs, in violation of the FLSA and MPWA.

***D. Recordkeeping.***

62. The Minnesota wage and hour laws require an employer to furnish an earnings statement to each employee that states, among other things, the employee's rate

of pay, total number of hours worked, and the employee's gross and net pay. Minn. Stat. § 181.032.

63. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

64. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

65. Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Minnesota wage and hour laws because it failed to include it failed to include the work erased by its rounding policy on Plaintiff's and all other current and/or former CSRs' payroll records.

66. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

67. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby

allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

**COLLECTIVE ACTION ALLEGATIONS**

68. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked for Cooperative Response Center, Inc. at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

69. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

70. *29 U.S.C. § 216(b) "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b)

---

[1] Plaintiff specifically reserves the right to amend the definition and/or propose subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CSR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

71. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

72. Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## MPWA CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative MPWA Class defined to include:

> *All current and former Customer Service Representative employees, and/or other job titles performing the same or similar job duties, who worked for Cooperative Response Center, Inc. in Minnesota at any time in the last three years.*

(hereinafter referred to as the "MPWA Class"). Plaintiff reserves the right to amend this definition as necessary.[2]

74. *Numerosity*: The members of the MPWA Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of members of the MPWA Class should be readily available from a review of Defendant's personnel and payroll records.

75. *Commonality/Predominance*: There is a well-defined community of interest among members of the MPWA Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant violated the MPWA by failing to pay current and former employees for all wages earned; and

b. Whether Plaintiff and the MPWA Class were damaged.

76. *Typicality*: Plaintiff's claims are typical of those of the MPWA Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise

[2] Plaintiff specifically reserves the right to amend the definition and/or propose subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

from Defendant's same policies, practices, and course of conduct as all other MPWA Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other MPWA Class members: whether Plaintiff and the MPWA Class were not paid for all wages earned as a result of Defendant's rounding policy and practice.

77. *Adequacy*: Plaintiff will fully and adequately protect the interests of the MPWA Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the MPWA Class.

78. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for members of the MPWA Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of the MPWA Class members' claims, even if each member of the MPWA Class could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative MPWA Class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

79. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## <u>COUNT I</u>

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES (FLSA Collective)

80. Plaintiff individually and on behalf of the proposed FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

81. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

82. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

83. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

84. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

85. The position of Customer Service Representative is not exempt from the FLSA.

86. Defendant's other job titles performing similar call center job duties are not exempt from the FLSA.

87. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

88. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

89. Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

90. Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

91. Defendant's violations of the FLSA were knowing and willful.

92. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied

to CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

93. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

94. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE MINNESOTA PAYMENT OF WAGES ACT, MINN. STAT. § 181.101, *et seq.* (MPWA Class)

95. Plaintiff, individually and on behalf of the proposed MPWA Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

96. Defendant at all relevant times was an employer within the meaning of Minn. Stat. § 181.171, subd. 4.

97. Defendant was required to pay Plaintiff and the MPWA Class for all wages earned.

98. Minn. Stat. § 181.101 requires every employer to pay all wages earned every pay period, including overtime pay.

99. Defendant, pursuant to its policies and illegal rounding practices, refused and failed to pay Plaintiff and the MPWA Class for all wages earned.

100. By failing to properly compensate Plaintiff and the MPWA Class for all wages earned, Defendant violated and continues to violate Plaintiff's and MPWA Class members' statutory rights under Minn. Stat. § 181.101.

101. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the MPWA Class have suffered damages in an amount to be determined at trial.

102. Plaintiff and the MPWA Class seek damages in the amount of their unpaid straight time wages, overtime wages, reasonable attorneys' fees and costs for this action, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems proper. *See* Minn. Stat. § 181.171.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying the MPWA Class pursuant to Fed. R. Civ. P. 23;

d. An Order designating Named Plaintiff to act as the Class Representative on behalf of the FLSA Collective and MPWA Class;

e. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant violated its obligations under the FLSA;

g. An Order declaring that Defendant violated the MPWA as set forth above;

h. An Order granting judgment in favor of Plaintiff and the FLSA Collective against Defendant and awarding the amount of unpaid wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the FLSA Collective's regular rate multiplied by all hours that Plaintiff and the FLSA Collective worked in excess of 40 hours per week;

i. An Order granting judgment in favor of Plaintiff and the MPWA Class against Defendant and awarding the amount of unpaid wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the MPWA Class' regular rate multiplied by all hours that Plaintiff and the MPWA Class worked in excess of 40 hours per week;

j. An Order granting judgment in favor of Plaintiff and the MPWA Class against Defendant and awarding the amount of unpaid straight-time wages calculated at Plaintiff's and the MPWA Class' regular rate of pay;

k. An Order awarding liquidated damages to Plaintiff and the FLSA Collective, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the FLSA Collective under the FLSA;

l. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

m. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n. An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through her undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 29, 2025

Respectfully submitted,

*/s/ Zackary S. Kaylor*
Jacob R. Rusch (MN Bar No. 0391892)
Zackary S. Kaylor (MN Bar No. 0400854)
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Attorneys for Plaintiff*